Christopher C. Hoffman (SBN 176334)
   E-Mail: choffman@fisherphillips.com
Adam F. Sloustcher (SBN 291657)
   E-Mail: asloustcher@fisherphillips.com
Brittany M. Wunderlich (SBN 328990)
   E-Mail: bwunderlich@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858)597-9600
Facsimile: (858)597-9601

Attorneys for Defendant, Noble House Shelter Pointe LLC dba Kona Kai Resort & Spa

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA JENNY ORNELAS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NOBLE HOUSE SHELTER POINTE LLC dba "Kona Kai Resort & Spa," a California and Washington limited liability corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. '21CV2039 W  MSB<br><br>*[Previously San Diego Superior Court Case No. 37-2021-00046624-CU-WT-CTL before the Honorable Keri Katz]*<br><br>**DEFENDANT'S NOTICE OF REMOVAL AND REMOVAL OF CIVIL ACTION FROM STATE COURT TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441, AND 1446**<br><br>State Complaint: November 2, 2021 |

TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. sections 1332, 1367, 1441, and 1446, Defendant Noble House Shelter Pointe LLC dba "Kona Kai Resort & Spa" ("Noble House" or "Defendant"), removes the above-entitled action from the Superior Court of the State of California for the County of San Diego, to the United States District Court for the Southern District of California. The

foregoing facts were true at the time the Complaint in this matter was filed and remain true as of the date of the filing of this Notice of Removal and Removal, as more fully set forth below.

I.     **PROCEDURAL HISTORY**

1. On November 2, 2021, Plaintiff JUANITA JENNY ORNELAS ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of San Diego, entitled, *Juanita Jenny Ornelas v. Noble House Shelter Pointe LLC dba "Kona Kai Resort & Spa, et al.*, Case No. 37-2021-00046624-CU-WT-CTL (the "Complaint"). A true and correct copy of the Complaint is attached as **Exhibit A** to the Declaration of Brittany M. Wunderlich ("Wunderlich Decl."), ¶ 4.

2. The Complaint asserts the following causes of action: (1) wrongful termination in violation of public policy; (2) unlawful gender discrimination; (3) failure to prevent hostile work environment; (4) misclassification; (5) overtime violations; (6) failure to pay a minimum wage; (7) rest period violations; (8) meal period violations; (9) failure to provide accurate itemized wage statements; (10) waiting time penalties; and (11) unfair competition. *See*, Wunderlich Decl., at ¶ 4, Ex. A.

3. On November 8, 2021, Plaintiff served a copy of the Summons, Complaint, Notice of Case Assignment and Case Management Conference, and the Alternative Dispute Resolution Package on Noble House. A copy of the Summons is attached as **Exhibit B**. A copy of the Notice of Case Assignment and Case Management Conference is attached as **Exhibit C**. A copy of the Alternative Dispute Resolution Package is attached as **Exhibit D**. *See*, Wunderlich Decl., at ¶ 4; Declaration of Melissa Garred ("Garred Decl."), ¶ 13.

4. On November 10, 2021, Plaintiff filed a First Amended Complaint ("FAC") adding a cause of action for a violation of the Private Attorneys General Act ("PAGA") pursuant to Labor code sections 2698, et seq. A true and correct

copy of the FAC is attached as **Exhibit E**. *See*, Wunderlich Decl., at ¶ 5, Ex. E.

5. On December 6, 2021, Noble House filed an Answer and Affirmative Defenses in the Superior Court of the State of California for the County of San Diego. Attached as **Exhibit F** is a true and correct copy of Noble House's Answer and Affirmative Defenses. *See*, Wunderlich Decl., at ¶ 6, Ex. F.

6. The Complaint (**Exhibit A**), Summons (**Exhibit B**), Notice of Case Assignment and Case Management Conference (**Exhibit C**), the Alternative Dispute Resolution Package (**Exhibit D**), FAC (**Exhibit E**), and Noble House's Answer (**Exhibit F**) are the only pleadings, process, or orders that have been served upon Noble House or that Noble House is otherwise aware of having been filed in this action. *See*, Wunderlich Decl., at ¶¶ 4-7, Ex. A-F.

## II. DIVERSITY JURISDICTION

7. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. section 1332 because Plaintiff and Noble House are citizens of different states, Noble House is not a citizen of California, and the amount in controversy for Plaintiff exceeds $75,000 exclusive of interest and costs. Accordingly, this case may be removed to this Court under 28 U.S.C. sections 1441 and 1446.

### A. Plaintiff's Citizenship

8. To establish citizenship for diversity purposes, a natural person must be domiciled in a particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Natural persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *Kanter v. Warnter-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residence is *prima facie* evidence of domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir.1994); *Marroquin v. Wells Fargo, LLC*, No. 11CV163-L BLM, 2011 WL 476540, at *1 (S.D. Cal. Feb. 3, 2011). An existing domicile is presumed to continue. *Mitchell v. United States*, 88 U.S. 350,

353 (1875) ("[D]omicile, once acquired, is presumed to continue until it is shown to have been changed."); *Mintzis v. Scott*, No. 2:14-CV-01799-CAS, 2014 WL 3818104, at *5 (C.D. Cal. July 30, 2014); *Bank One, Texas, N.A. v. Montle*, 964 F.3d 281, 288 (3d Cir. 2006). It is presumed that a natural person's residence is also his or her domicile, and a party resisting this presumption bears the burden of producing contrary evidence. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).

9. Here, Plaintiff is a resident of San Diego County, California, and at all times relevant, she resided in the County of San Diego, California. FAC, ¶ 1. Accordingly, Plaintiff is domiciled in and a citizen of the State of California.

**B. Noble House's Citizenship**

10. Noble House Shelter Pointe, LLC is a limited liability company. *See*, Garred Decl., ¶ 2. In determining the citizenship of an LLC, courts look to the citizenship of each member of the company. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("*Johnson*"). Unlike a corporation, an LLC is not a citizen of the state in which it was organized unless one of its members is a citizen of that state. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015).

11. At all relevant times, Noble House Shelter Pointe, LLC was and is a limited liability company with one member – Noble Hotels & Resorts, Ltd. *See*, Garred Decl., at ¶ 2.

12. At all relevant times, Noble Hotels & Resorts, Ltd. was an is a Texas limited partnership. *See*, Garred Decl., at ¶ 3. The citizenship of a limited partnership is determined by the citizenship of its partners. *See Johnson, supra,* 437 F.3d at 899; *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2nd Cir. 1966), cert. denied. The sole general partner of Noble Hotels & Resorts, Ltd. is Westgroup Partner, Inc. *See*, Garred Decl., at ¶ 3. The sole limited partner of Noble Hotels & Resorts, Ltd. is Noble House Associates, LLC. *See*, Garred Decl., at ¶ 3.

13. On December 31, 2018, prior to Plaintiff's hire on August 21, 2019, Westgroup Partner, Inc. was converted into Westgroup Partner, LLC. *See*, Garred Decl., at ¶ 4. At all relevant times, Westgroup Partner, LLC was a limited liability company with one member – Noble House Associates, LLC. *See*, Garred Decl., at ¶ 4.

14. Noble House Associates, LLC is a limited liability company with one manager, the Colee Family Trust, and four members (1) the Colee Family Trust; (2) Westgroup Venture, LLC; (3) Noble House Investors, LLC; and (4) Noble House Associate PSP, LLC. *See*, Garred Decl., at ¶ 5. Where a member of a limited liability company is a trust, the trustee's citizenship is determined by the citizenship of the trustee. *Johnson*, 437 F.3d at 899; *see also Demarest v. HSBC Bank USA, N.A. as Tr. for registered holders of Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-HE2*, 920 F.3d 1223, 1231 (9th Cir. 2019).

    a. <u>*The Colee Family Trust*</u>: The sole trustees and sole beneficiaries of the Colee Family Trust are Patrick R. Colee and Diane F. Colee. *See*, Garred Decl., at ¶ 9. Because each trustee of the Colee Family Trust is a natural person, the diversity requirements for natural persons must be satisfied to make removal proper. *Johnson*, *supra*, 437 F.3d at 899. Patrick R. Colee is a resident of Key West, Florida, where he lived when the Complaint was filed and intends to remain indefinitely. *See*, Garred Decl., at ¶ 9; Declaration of Patrick Colee ("P. Colee Decl."), ¶ 2-4. Patrick R. Colee is accordingly domiciled in and a citizen of the State of Florida. Diane F. Colee is a resident of Key West, Florida, where she lived when the Complaint was filed and intends to remain indefinitely. *See*, Garred Decl., at ¶ 9; Declaration of Diane Colee ("D. Colee Decl."), ¶ 2-4. Diane F. Colee is accordingly domiciled in and a citizen of the State of Florida.

    b. <u>*Westgroup Venture, LLC*</u>: The members of Westgroup Venture, LLC are the Colee Family Trust, the James P. Colee 2012 Family Trust, and the Scott C. Colee 2012 Family Trust. Garred Decl., at ¶ 6. As discussed above,

FP 42262025.2

both trustees and beneficiaries of the Colee Family Trust are citizens of the State of Florida. The sole trustee and sole beneficiary of the James P. Colee Family Trust is James P. Colee. Garred Decl., at ¶ 10. James P. Colee is a resident of Seattle, Washington, where he lived when the Complaint was filed and intends to remain indefinitely. *See*, Garred Decl., at ¶ 10; Declaration of James Colee ("J. Colee Decl."), ¶ 2-4. James P. Colee is accordingly domiciled in and a citizen of the State of Washington. The sole trustee and sole beneficiary of the Scott C. Colee 2012 Family Trust is Scott C. Colee. Garred Decl., at ¶ 11. Scott C. Colee is a resident of Seattle, Washington, where he lived when the Complaint was filed and intends to remain indefinitely. *See*, Garred Decl., at ¶ 11; Declaration of Scott Colee ("S. Colee Decl."), ¶ 2-4. Scott C. Colee is accordingly domiciled in and a citizen of the State of Washington.

    c. <u>Noble House Investors, LLC</u>: The members of Noble House Investors, LLC are the Colee Family Trust, the James P. Colee 2012 Family Trust, and the Scott C. Colee 2012 Family Trust. Garred Decl., at ¶ 7. As discussed above, all trustees and beneficiaries of the Colee Family Trust are citizens of the State of Florida. All the trustees and beneficiaries of the James P. Colee Family Trust and the Scott C. Colee Family Trust are citizens of the State of Washington.

    d. <u>Noble House Associates PSP, LLC</u>: The only member of Noble House Associates PSP, LLC is Noble House PSP Manager, LLC and its sole member is Noble House Associates, LLC. Garred Decl., at ¶ 8. The citizenship of Noble House Associates, LLC is discussed above.

  15. Accordingly, Noble House is a citizen of Florida and Washington.[1] *Mondragon*, *supra*, 736 F.3d at 886 (residence is *prima facie* evidence of

---

[1] The Complaint also names Defendants DOES 1-50 ("DOE Defendants"). Pursuant to 28 U.S.C. § 1441(a), the citizenship of DOE Defendants is disregarded. *See*, *Newcombe v. Adolf Coors Co.*, 157 686, 690-691 (9th Cir. 1998). For this reason, this Notice of Removal does not discuss the citizenship of the alleged DOE

domicile); *Mitchell, supra,* 88 U.S. at 353 ("[D]omicile, once acquired, is presumed to continue until it is shown to have been changed.").

16. Because Plaintiff is a California citizen and Noble House is a citizen of Florida, complete diversity of citizenship exists in this matter.

### C. **Amount in Controversy**

17. The Court has diversity jurisdiction over an action in which the parties are not citizens of the same state and "the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs." 28 U.S.C. § 1332(a).

18. Plaintiff's Complaint does not identify the amount in controversy in the action, though the fact that this action was filed as an unlimited civil action indicates that the amount in controversy exceeds $25,000. *See,* **Ex. A and E.**

19. The $75,000 threshold necessary for diversity jurisdiction is not particularly burdensome. When seeking removal of a state action to federal court based on diversity jurisdiction, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). The failure of the Complaint to specify the total amount of damages or other monetary relief sought by Plaintiff does not deprive this Court of jurisdiction. *See, Saulic v. Symantec Corp.*, No. SA CV 07-610 AHS (PLAx), 2007 WL 5074883, *5 (C.D. Cal. Dec. 26, 2007); *Parker-Williams v. Charles Tini & Associates, Inc.*, 53 F.Supp.3d 149, 152 (D.D.C. 2014) (amount in controversy threshold in a disability discrimination case was undoubtedly met after taking into account Plaintiff's ability to recover unspecified amounts of compensatory damages, punitive damages, and attorneys' fees) ("*Parker-Williams*"); *White v. J. C. Penney Life Ins. Co.,* 861 F.Supp. 25, 26 (S.D. W.Va. 1994) (defendant may remove suit to federal court notwithstanding failure of

---

Defendants.

plaintiff to plead specific dollar amount in controversy; if the rules were otherwise, "any Plaintiff could avoid removal simply by declining . . . to place a specific dollar claim upon its claim."). Defendant need only to establish by *a preponderance of evidence* that the claims exceed the jurisdictional minimum. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 982 (9th Cir. 2013); *Singer v. State Farm Mutual Auto. Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997).

20. Noble House adamantly denies Plaintiff's allegations, denies any liability, and denies Plaintiff has suffered any damages. Nevertheless, in assessing the amount in controversy for diversity jurisdiction purposes, a court must assume that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Bank of California Nat. Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972); *Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1117 (C.D. Cal. 2010); *Kenneth Rothchild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). This includes any possible award of attorneys' fees where, as here, a statute at issue awards attorneys' fees to the prevailing party. *See, Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) ("The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract.") (citations omitted); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998) (citing *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir. 1979)). Further, a court must account for claims for not only compensatory damages but also punitive damages. *See e.g.*, *Bell v. Preferred Life Ass'n Society*, 320 U.S. 238, 240 (1940) ("Where both actual and punitive damages are recoverable under a complaint, each must be considered to the extent claimed in determining jurisdictional amount."); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001), *holding modified by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ("It is well established that punitive damages are part of the amount in controversy in a civil action."). The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint,

not what the amount of a defendant's liability (if any) will ultimately be.

21. In the instant case, Plaintiff alleges twelve causes of action seeking recovery of past and future lost income and benefits, emotional distress damages, unpaid wages, unpaid meal and rest premiums, liquidated damages, penalties, attorney's fees, and punitive damages. FAC, ¶¶ 30-31, 37-40, 51-54, 57, 61-62, 66-67, 72, 77, 80-81, 86-87, 91-93, and 103-104, Prayer ¶¶ 1-9. Although Noble House denies Plaintiff's claims of wrongdoing and her unspecified requests for relief thereon, the facial allegations in the Complaint and total amount of estimated past and future lost income and benefits, emotional distress damages, unpaid wages, penalties, attorney's fees, and punitive damages for Plaintiff's individual claims at issue are well in excess of $75,000 exclusive of Plaintiff's PAGA claim.

    a. *Compensatory Damages*. Plaintiff's claim for compensatory damages, alone, exceeds $75,000.00. In connection with her first cause of action, Plaintiff alleges as follows: "As a direct, foreseeable, and legal result of Defendants' discriminatory acts, Plaintiff has incurred and continues to incur emotion distress, a loss of earnings, past and future, and a loss of earning capacity all to Plaintiff's damage in a sum in excess of the minimum jurisdictional limits of this court, the precise amount of which will be proven at trial." FAC, ¶ 30. Further, Plaintiff alleges that her second and third causes of action caused her to lose, and continue to lose, income, loss of earning capacity, loss of job opportunity, benefits, and other economic damages according to proof. FAC, ¶ 37 and 53. At the time her employment with Noble House ended, Plaintiff earned an annual base salary of approximately $58,240.00. *See,* Garred Decl., at ¶ 12; Wunderlich Decl., at ¶ 8. This equates to approximately $4,853.33 per month ($58,240.00 divided by 12 months). As of the date of this Removal, there have been approximately seven (7) months since Plaintiff stopped working at Noble House and, thus, Plaintiff has allegedly lost $33,973.33 in income. Assuming this

action proceeds for another 12 months, Plaintiff will have allegedly lost an additional $58,240.00 of income - totaling an amount of **$92,213.33** in lost income. *See,* Wunderlich Decl. ¶ 8. This amount does not even include any possible recovery of front pay - which is lost income incurred following judgment after trial.

        b.    <u>*Emotional Distress Damages*</u>. Plaintiff also seeks an unspecified amount of damages for emotional distress. Specifically, Plaintiff claims that she has suffered and continues to suffer emotional distress, including "humiliation, embarrassment," "severe anguish," and "anger, tension, anxiety, depression, lowered self-esteem, and emotional distress" Complaint, ¶¶ 30, 38, and 52. Because Plaintiff alleges she suffered emotional distress prior to her termination, she still suffers from emotional distress, and will continue to suffer the alleged distress, it is very likely that Plaintiff will seek a substantial sum for emotional distress damages. *Simmons v. PCR Technology, Inc.*, 209 F.Supp.2d 1029, 1034 (N.D. Cal. 2002) ("emotional distress damages in a successful employment discrimination case may be substantial."). Recent verdicts in employment cases confirm that emotional distress awards may be substantial:

        i.    *Sonia Lozano v. Alcoa Inc., Alcoa Fastening Systems*, Superior Court, Los Angeles County, 2006 WL 2561276 (Cal.Superior) (April 19, 2006) (jury awarded the plaintiff **$9,065,000** after determining that the plaintiff was wrongfully terminated and that defendant intentionally inflicted emotional distress on her.)

        ii.    *Forer vs. St. Luke's Hospital*, United States District Court, N.D. California, 2001 WL 558058 (N.D.Cal.) (March 21, 2001) (jury awarded **$260,000** for emotional distress in connection with the plaintiff's wrongful termination claim.)

        iii.    *Andrews vs. Hansa Stars Inc.*, Superior Court, Los Angeles County, 2009 WL 1587809 (Cal.Superior) (April 16, 2009) (in connection with wrongful termination claims, two of the plaintiffs awarded **$375,000** and

**$225,000** for emotional distress damages.)

    iv. *Silverman vs. Stuart F. Cooper Inc.*, Los Angeles County, 2013 WL 5820140 (Cal.Super.) (July 19, 2003) (jury awarded the plaintiff **$151,333** for past and future emotional distress in wrongful termination, FEHA discrimination, FEHA retaliation, FEHA harassment/failure to prevent discrimination and harassment, and failure to pay final wages and waiting time penalties case.)

  c. *See, Ontiveros v. Michaels Stores, Inc.*, No. CV 12-09437 MMM ( ), 2013 WL 815975, at *2 (C. D. Cal. March 5, 2013) (a court may consider verdicts in similar cases when determining whether the amount in controversy exceeds the jurisdictional minimum where the complaint on its face does not identify a specific amount in controversy); *Marcel v. Pool Co.*, 5 F.3d 81, 83 (5th Cir. 1983) (court properly considered jury verdicts in other similar cases to reach conclusion that the amount in controversy exceeded $75,000.00).

  d. <u>*Willful Misclassification.*</u> Plaintiff alleges that Noble House willfully misclassified her as an exempt employee. FAC, ¶¶ 55-57. Plaintiff seeks penalties under Labor Code section 226.8 for an alleged "pattern or practice" of misclassification. FAC, ¶ 56. Pursuant to Labor Code section 226.8(b), a determination from a court or that an employer has willfully misclassified an individual subjects that employer to a civil penalty of not less than $5,000 and not more than $15,000 per violation. Where there has been a determination of willful misclassification and a "pattern and practice" of such violations, an employer shall be subjected to a civil penalty of not less than $10,000 and not more than $25,000 per violation. Here, because Plaintiff seeks penalties under Labor Code section 226.8(c), she has placed up to **<u>$25,000</u>** at issue by her claim for willful misclassification.

  e. <u>*Unpaid Wages*</u>. Plaintiff alleges Noble House failed to pay her for all time worked because it misclassified her and she worked "in excess

of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a workweek." FAC, ¶ 60. Plaintiff worked for Noble House from approximately August 21, 2019 to April 27, 2021, approximately 88 weeks. *See,* Garred Decl., at ¶ 12. Plaintiff does not allege the amount of unpaid wages allegedly owed, but does allege that she "regularly worked off-the-clock" in which she was required to "respond to Defendant [Noble House] and work-related requests and perform work while clocked out for purported meal breaks, perform work before clocking in for the start of her shift, wait in line to clock in for the start of her shift or meal period, perform work after clock out for the end of her shift." FAC, ¶ 60. Defendant estimates that Plaintiff has placed three (3) hours per day of unpaid time at issue. Thus, assuming Plaintiff worked an average of three (3) hours of unpaid time per week, Plaintiff has placed at issue approximately 1,320 hours at issue (3 hours per day * 5 hours per week * 88 workweeks). At the end of Plaintiff's employment, Plaintiff's hourly wage was $28.00 per hour (58,240.00 divided by 52 weeks, divided by 8 hours per day). *See,* Garred Decl., at ¶ 12. As such, Plaintiff has placed at issue **$36,960** (1,320 hours x $28.00 hour) by her claim for unpaid wages.

        f.    <u>*Liquidated Damages*</u>. Plaintiff also seeks liquidated damages for the unpaid wages alleged. FAC, ¶ 67, Prayer for Relief, ¶ 1. Under Labor Code section 1194.2, a plaintiff may recover liquidated damages in the amount equal to the unpaid minimum wages, subject to a three-year statute of limitations. Cal. Code of Civil Procedure § 338, subd. (a). Again, assuming that Plaintiffs may collect liquidated damages in the amount of her allegedly unpaid wages, Plaintiff has placed at issue approximately **$36,960**.

        g.    <u>*Meal and Rest Period Penalties.*</u> Plaintiff also seeks meal period and rest break premiums. FAC, ¶¶ 19, 21, 23-25, 68-72, and 73-77. Employers must generally take certain measures to provide employees with opportunities to take meal periods and rest breaks. *See Murphy v. Kenneth Cole*

*Productions, Inc.*, 40 Cal.4th 1094, 1102 (2007) ("*Murphy*"). The remedy for an employer's failure to provide an employee with an opportunity to take a meal period is one hour of pay to any employee to whom the employer fails to provide an opportunity to take a meal period. Labor Code § 226.7; *Murphy,* 40 Cal.4th at 1102.[2] Similarly, the general remedy for an employer's failure to provide an employee with an opportunity to take a rest break is one hour of pay to any employee to whom the employer fails to provide an opportunity to take a rest break. Labor Code § 226.7; *Murphy,* 40 Cal.4th at p. 1102. Where, as here, Plaintiff has alleged a claim under California Business & Professions Code section 17200, *et seq.*, the statute of limitations for recovering meal period and rest break premiums is four years.

        h.      Multiple California district courts have held that a 100% violation rate (meaning the court assumes for purposes of removal that class members were entitled to receive at least one meal period penalty and one rest break penalty for every shift worked) is appropriate. *Giannini v. Northwestern Mut. Life Ins. Co.*, No. 12-77, 2012 WL 1535196, at *3 (N.D. Cal. Apr. 30, 2012) (held that removal proper to assume each class member missed a meal period and rest break every day); *Muniz v. Pilot Travel Ctrs. LLC*, No. 07-0325, 2007 WL 1302504, at *3-4 (E.D. Cal. May 1, 2007); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCX, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (applying a 100% violation rate); *Agredano v. Sw. Water Co. et al.,* No. CV 17-02627 SJO (EX), 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) (determining that use of a 100% violation rate is proper); *Duberry v. J.Crew Group, Inc.*, No. 2:14-cv-08810-SVW-MRW, 2015 WL 4575018, *6 (C.D. Cal. July 28, 2015); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-CJC, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015).

---

[2] Meal periods may be waived under the Labor Code; and an employer need not require an employee to actually take a meal period or rest break. *See Murphy v. Kenneth Cole Productions, Inc*. (2007) 40 Cal.4th 1094.

i. Plaintiff worked for Noble House from approximately August 21, 2019 to April 27, 2021, approximately 88 weeks. *See,* Garred Decl., at ¶ 12. At the end of Plaintiff's employment, Plaintiff's hourly wage was $28.00 per hour (58,240.00 divided by 52 weeks, divided by 8 hours per day). *See,* Garred Decl., at ¶ 12. Assuming, as Plaintiff has alleged, that Plaintiff "never completely relieved of duty," Plaintiff has placed at issue $12,320 in meal period penalties (88 weeks x 5 meal period violations per week x $28.00 per hour = $12,320) and the same, $12,320 in rest break penalties (88 weeks x 5 rest period violations per week x $28.00 per hour = $12,320). In sum, Plaintiff has placed at issue **$24,640** with her meal and rest period claims.

j. *Waiting Time Penalties.* Plaintiff seeks waiting time penalties under Labor Code section 203. FAC, ¶¶ 82-87. Under Labor Code section 203, an employer who willfully fails to timely pay an employee's wages owed at the time of the employee's separation (or within 72 hours for a resignation), must continue to pay the employee's daily wages as a penalty until all owed wages are paid, for up to 30 consecutive days. Plaintiff alleges Defendant did not pay wages allegedly to her, FAC, ¶¶ 82-87, and seeks 30 days' worth of wages on her behalf as a result. Plaintiff worked for Noble House from approximately August 21, 2019 to April 27, 2021, approximately 88 weeks. *See,* Garred Decl., at ¶ 12. At the end of Plaintiff's employment, Plaintiff's hourly wage was $28.00 per hour (58,240.00 divided by 52 weeks, divided by 8 hours per day). This means the theoretical waiting time penalties sought by Plaintiff individually is **$6,720** ($28.00 * 8 hours per day * 30 days = $6,720.00).

k. *Attorney's Fees*. Plaintiff also seeks to recover an unspecified amount in attorneys' fees related to all causes of action. FAC, ¶¶ 40, 54, 57, 62, 66, 81, 87, 93, and 104, Prayer ¶ 4-5; Cal. Gov't Code § 12965(b). "When attorney fees are added into the equation," the conclusion that more than $75,000 is in controversy "becomes irresistible." *Parker-Williams*, *supra*,

53 F.Supp.3d at 153. In the Ninth Circuit, district courts have the discretion to calculate fee awards using either the lodestar method or the "percentage-of-the-fund" method. *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citations omitted). Even where "the Court lacks the information required to calculate [attorneys'] fees, it is difficult to believe that the amount in controversy here could be lower than $75,000 when the [attorneys'] fees are factored in along with compensatory and punitive damages." *Parker-Williams*, *supra*, 53 F.Supp.3d at 152. It is also more than likely that Plaintiff's attorney's fees, alone, will **exceed $75,000** if this matter goes to trial.

          l. *Punitive Damages*. Plaintiff also seeks punitive damages. Complaint, ¶¶ 31, 39, and 51, Prayer ¶ 2. Many punitive damages verdicts against businesses exceed $75,000.00. *See, Dunn v. Allstate Insurance Co.*, 1997 WL 813002 at *2, No. 97CV1113JM (RBB) (S.D. Cal. Dec. 15, 1997) (since removing defendant was a corporation, "it [was] more likely that any award of punitive damages would exceed $75,000.00"); *see also, Richmond v. Allstate Insurance Co.*, 897 F.Supp. 447, 451 (S.D. Cal. 1995). *See also, Allen v. R&H Oil & Gas Co.,* 63 F.3d 1326, 1336 (5th Cir. 1995) (concluding that a punitive damages claim was "more likely than not" to exceed the jurisdictional amount of $75,000). Although Noble House adamantly denies that any award of damages, let alone punitive damages, are recoverable, Plaintiff's prayer for punitive damages, by itself, also **satisfies the $75,000** requirement.

22. Based on the nature of the allegations and damages sought in the Complaint, the evidence is sufficient to establish that Plaintiff has placed in controversy an amount exceeding the jurisdictional amount of $75,000.00, exclusive of costs and interest. Accordingly, this State Court action may be removed to the United States District Court for the Southern District of California because, at the time this action was filed and the present time, diversity jurisdiction exists.

15

DEF'S NTC OF REMOVAL

FP 42262025.2

## III. SUPPLEMENTAL JURISDICTION

23. To the extent this Court considers Plaintiff's PAGA claim separate, this Court has supplemental jurisdiction over the remaining PAGA claims because they form part of the same case or controversy which is the subject of Plaintiff's minimum wage, overtime, rest break, meal period, wage statements, and waiting time penalties claims. 28 U.S.C. §§ 1367(a) and 1441(a); *see City of Chicago v. Int's Conference of Surgeons*, 522 U.S. 156, 156-59 (1997) (affirming the exercise of supplemental jurisdiction over a plaintiff's state law claims where they have a "common nucleus of operative fact" with the federal claims); *see also* FAC, ¶ 103.

24. Therefore, this Court has jurisdiction over all claims in FAC.

## IV. TIMELINESS OF REMOVAL

25. Under 28 U.S.C. § 1446(b), a "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, . . . " The 30-day period for removal is triggered once service occurs. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

26. Noble House was served with the Complaint on November 8, 2021, and the FAC on November 10, 2021. Wunderlich Decl., ¶ 2-3; Garred Decl., ¶ 13; **Ex. A and E.** Thus, the instant removal, filed on November 7, 2021, is within the 30-day window to remove. Thus, this Removal is timely.

## V. NOTICE PROVIDED TO STATE COURT AND PLAINTIFF

27. Written notice of this Notice of Removal in the United States District Court for the Southern District of California will be served on Plaintiff's counsel of record at Dogra Law Group PC. A copy of the Notice to Adverse Party of Removal of Action to Federal Court is attached hereto as **Exhibit G** (without exhibits because the exhibit is this Notice). In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court in the Superior Court for the State of California, County of San Diego. A copy of the Notice to State Court of Removal

of Action to Federal Court is attached hereto as **Exhibit H** (without exhibits because the exhibit is this Notice). Wunderlich Decl., ¶ 9, Ex. G-H.

28. Noble House respectfully requests that the above-mentioned litigation, now pending before the Superior Court of California, San Diego County, be removed to this Court based on diversity jurisdiction and supplemental jurisdiction.

DATE: December 7, 2021

Respectfully submitted,

**FISHER & PHILLIPS LLP**

By: /s/ BRITTANY M. WUNDERLICH
Christopher C. Hoffman
Adam F. Sloustcher
Brittany M. Wunderlich
Attorneys for Noble House Shelter Pointe LLC dba Kona Kai Resort & Spa

FP 42262025.2

# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 4747 Executive Drive, Suite 1000, San Diego, California 92121.

On December 7, 2021 I served the foregoing document entitled **DEFENDANT'S NOTICE OF REMOVAL AND REMOVAL OF CIVIL ACTION FROM STATE COURT TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441, AND 1446** on all the appearing and/or interested parties in this action by placing 0 the original 1 a true copy thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Shalini Dogra (SBN 309024)<br>DOGRA LAW GROUP PC<br>2219 Main Street, Unit 239<br>Santa Monica, California 90405 | Telephone: (747)234-6673<br>Facsimile: (310)868-0170<br>E-Mail: shalini@dogralawgroup.com<br>Attorney for Juanita Jenny Ornelas |

☐ **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed December 7, 2021n at San Diego, California.

/s/ SUSAN JACKSON
Print Name

By: /s/ SUSAN JACKSON
Signature